**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRENDA LEE B.,

                                        Plaintiff,

             v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 5:20-CV-1403
                                                     (CFH)

                                        Defendant.

**APPEARANCES:**                        **OF COUNSEL:**

Law Offices of Kenneth Hiller, PLLC     JUSTIN M. GOLDSTEIN, ESQ.
600 North Bailey Avenue – Suite 1A      KENNETH R. HILLER, ESQ.
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration          LISA SMOLLER, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

　　　　Brenda Lee B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her applications for disability insurance and social security

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

income benefits.  See Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 18.  The Commissioner cross moves for judgment on the pleadings.  See Dkt. No. 19.  For the following reasons, plaintiff's motion is granted, the Commissioner's cross-motion for judgment on the pleadings is denied, and the determination of the Commissioner is reversed and remanded for further proceedings.

## I. Background

On November 1, 2018, plaintiff filed Title II and Title XVI applications for disability insurance and social security income benefits.  See T. at 253-301.[3]  Plaintiff alleged a disability onset date of March 11, 2017.  See id. at 253.  The Social Security Administration ("SSA") denied plaintiff's claim on February 14, 2019.  See id. at 149-66. Plaintiff requested a hearing, see id. at 185, and a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on February 19, 2020.  See id. at 62-86.  On March 20, 2020, the ALJ issued an unfavorable decision.  See id. at 29-39. The Appeals Council denied plaintiff's request for review on October 21, 2020.  See id. at 15-19.  Plaintiff timely commenced this action on November 13, 2020.  See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 12.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since March 11, 2017, the

alleged onset date.  See T. at 31.  At step two, the ALJ found that plaintiff had the

following severe impairments: "asthma; fracture of wrist; obesity; [and] osteoarthritis[.]"

Id.  At step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 34-35.

Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b)

and 416.967(b) except

> [she] can occasionally lift and carry twenty pounds, frequently lift and carry
> ten pounds, sit for up to six hours, stand or walk for approximately six
> hours in eight hour day with normal breaks; occasionally climb
> ramps or stairs; occasionally climb ladders, ropes or scaffolds; can
> perform occasional balancing, stooping, kneeling, crouching, and crawling;
> and should avoid concentrated exposure to smoke, dust, and respiratory
> irritants.

Id. at 35.  At step four, the ALJ determined that plaintiff was unable to perform relevant

past work.  See id. at 38.  At step five, considering the plaintiff's age, education, work

experience, and RFC, the ALJ concluded that there were jobs that existed in significant

numbers in the national economy that plaintiff could perform.  See id. at 38-39.  Thus,

the ALJ determined that plaintiff had "not been under a disability, as defined in the

Social Security Act, from March 11, 2017, through the date of th[e] decision[.]"  Id. at 39.


**IV. Arguments**[4]

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages'
headers.

Plaintiff argues that the ALJ erred because he "did not identify substantial evidence supporting the RFC finding and failed to sufficiently apply the factors to the medical opinions." Dkt. No. 18 at 13.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and that he appropriately assessed the various medical opinions under the relevant regulations.  See Dkt. No. 19.

## V. Discussion

### 1. Plaintiff's Mental Health Conditions

Plaintiff contends the ALJ erred in finding her Post-Traumatic Stress Disorder ("PTSD") to be a non-severe impairment by improperly reviewing the medical opinions and cherry-picking the record.  See Dkt. No. 18 at 19.  Specifically, plaintiff asserts that the ALJ improperly relied on the state agency medical consultants' and consultative examiner's opinions and did not sufficiently explain the supportability or consistency of any of the opinions, including those of plaintiff's treating sources.  See id. at 20-25.  The Commissioner argues that the ALJ did not err because he "relied on more than the state agency findings, as he also considered various medical reports from [p]laintiff's providers and the consultative examiner's report and opinion[.]"  Dkt. No. 19 at 11.

Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability and consistency, the author's relationship with the claimant and specialization, and "other factors."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or

she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).[5] "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The

---

[5] The ALJ is not required to discuss the remaining factors unless he or she finds that two or more medical opinions are equally supported and consistent with the record.  See 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Court "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted). Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision[.]'" Cichocki v. Astrue, 729 F.3d 172, 178, n.3 (2d Cir. 2013) (citing Mongeur, 722 F.2d at 1040).

## A. ALJ Decision

The ALJ did not find plaintiff's anxiety, depression, or PTSD to be severe impairments and did not include any mental-health-related limitations in plaintiff's RFC. See T. at 31-34. In making this step-two determination, the ALJ recounted some of the treatment notes in the record. See id. at 32. The ALJ explained that "[d]uring a May 22, 2017[,] visit with Alison Stringham, M.D., [plaintiff] reported worsening anxiety and a history of PTSD . . . . She reported decreased concentration, depressed mood, excessive worry, hyperventilation, anxious behavior, palpitations and shortness of

breath[.]"  Id. at 32 (citing T. at 405-406).  During the examination, plaintiff "had an

anxious and depressed mood . . . .  She was agitated and withdrawn with delayed

speech but she had normal cognition, normal memory, normal judgment and normal

thought content."  Id. (citing T. at 407).  The ALJ also stated that "[d]uring a June 5,

2017[,] visit with Erika Sadeghi, M.D., [plaintiff] reported that her anxiety had improved

after starting Celexa two week[s] ago . . . .  On examination, the claimant had a normal

mood and affect[.]"  Id. (citing T. at 403-404).  Next, on October 8, 2018, plaintiff had a

"visit with nurse practitioner Gracia Roulan, NP," in which she "reported a dysphoric

mood, sleep disturbance, nervousness and anxiety . . .  On examination, [plaintiff] had

an anxious and depressed mood but normal speech and behavior, normal judgment

and thought content and normal cognition and memory[.]"  Id. (citing T. at 577-78).

"During an October 23, 2018[,] intake assessment, [plaintiff] presented with chronic

PTSD but was also noted to be a questionable or unreliable historian[.]"  Id. (citing T. at

595).

The ALJ then recounted a May 22, 2019, "medication management visit with

nurse practitioner Samantha Shue, NP, [wherein plaintiff] reported that she was feeling

well despite not yet starting an increase in Depakote[.]"  T. at 32 (citing T. at 787).

Plaintiff explained to NP Shue that she "ha[d] been meeting with her individual therapist

and this ha[d] been going well for her."  Id. at 787.  During the examination, plaintiff "had

a cooperative demeanor, normal eye contact, normal orientation, normal attention and

concentration, intact memory, normal speech, normal psychomotor activity, an

appropriate affect, a normal mood, reality based thought content, intact thought

processes, no perceptual disturbances, fair insight, fair judgment, average impulse

control and average intelligence[.]"  Id. at 32 (citing T. at 788-89).  Further, "[d]uring a
September 23, 2019[,] visit with Ms. Shue, [plaintiff] reported feeling a lot better since
stopping Trileptal and restarting Depakote . . . .  She reported that her mood was better
and more stable and she was sleeping much better.  Ms. Shue noted generally normal
examination findings[.]"  Id. (citing T. at 1012, 1015-1016).  Finally, "[d]uring a
December 2019 visit with Jane Fico, LCSW, [plaintiff] reported improvement in her
depression and her PTSD symptoms . . . .  She reported that she still experienced
exacerbation in her symptoms at times but she felt emotionally stronger overall."  Id.
(citing T. at 951).

        The ALJ also reviewed the mental health opinions from the consultative
examiner, two state agency medical consultants, and plaintiff's therapist, Ms. Fico.  See
T. at 32-33.  Dante Alexander, Psy.D., conducted plaintiff's consultative examination in
January 2019.  See id. at 711.  During the examination, plaintiff was cooperative with an
adequate manner of relating, social skills, and overall presentation; she made
appropriate eye contact; had coherent and goal-oriented thoughts with no
hallucinations, delusions, or paranoia; she was oriented to time and place; she had a
mildly anxious affect; and reported having an anxious mood.  See id. at 712.  Plaintiff's
attention and concentration were "[m]idly impaired due to nervousness in the
evaluation[,]" her intellectual functioning was below average, her general fund of
information was "somewhat limited[,]" and her insight and judgment were "[f]air."  Id.  Dr.
Alexander determined that plaintiff had (1) no limitations understanding, remembering,
or applying simple directions and instructions, using reason and judgment to make
work-related decisions, maintaining personal hygiene and appropriate attire, having

awareness of hazards and taking appropriate precautions; (2) mild limitations understanding, remembering, or applying complex directions and instructions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration, performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work; and (3) mild to moderate limitations regulating her emotions, controlling her behavior, and maintaining her well-being.  See id. at 713. Dr. Alexander diagnosed plaintiff with "[u]nspecified trauma and stressor related disorders[]" and concluded that her "[d]ifficulties are caused by distractibility.  The results of the examination appear to be consistent with psychiatric problems, but in itself do[] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis."  Id.

The ALJ next explained that state agency psychiatric consultant S. Hennessey, Ph.D., reviewed the record in February 2019.  See T. at 33.  The ALJ stated that "Dr. Hennessey concluded that [plaintiff's] mental impairment was non-severe with mild limitation in understanding, remembering or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting or maintaining pace; and mild limitation in adapting or managing herself."  Id. (citing T. at 103-104).  Further, "[i]n June 2019, State agency psychiatric consultant M. Momot-Baker, Ph.D., affirmed Dr. Hennessey's opinion[.]"  Id. (citing T. at 119-21).

The ALJ concluded that Drs. Alexander, Hennessey, and Momot-Baker's opinions were "persuasive.  They are well supported by Dr. Alexander's examination findings and consistent with treating source records showing largely normal examination

findings.  They also come from medically acceptable sources with program knowledge."
T. at 33.

The ALJ also recounted Ms. Fico's January 2020 medical source statement.  See
T. at 33.  Ms. Fico explained that she met with plaintiff bi-weekly for forty-five-minute
counseling sessions.  See id. at 1032.  She diagnosed plaintiff with chronic PTSD with
financial- social- employment- and health-related stressors.  See id.  Ms. Fico noted that
plaintiff was "[u]nable to meet competitive standards" in maintaining regular attendance,
working in coordination or proximity to others, completing a normal work day or work
week without interruption from her psychologically-based symptoms, accepting
instructions and responding appropriately to criticism, getting along with co-workers or
peers, dealing with normal work stress, interacting appropriately with the general public,
maintaining socially appropriate behavior, and using public transportation.  Id. at 1033-
34.  Ms. Fico explained her limitations by stating that "PTSD symptoms including
avoidance behaviors, persistent and exaggerated negative beliefs [and] expectations of
self/others, persistent neg. emotional state, irritability, recklessness often lead to
interpersonal conflicts (anger responses, aggressiveness towards others), and would be
difficult to manage in vocational settings[.]"  Id. at 1034.  Ms. Fico noted that plaintiff
would miss more than four days of work per month.  See id.  The ALJ stated that he did
"not find Ms. Fico's opinion persuasive.  It is not well supported by her treatment records
or consistent with the overall medical evidence of record."  Id. at 33.

Thus, the ALJ concluded that plaintiff had mild limitations in all four mental health
functional areas.  See T. at 34.  Specifically, the ALJ explained that plaintiff reported
having short-term memory deficits and social withdrawal, and "[o]n examination" she

had mildly impaired memory, below average intellectual functioning, was cooperative with an adequate manner of relating and social skills, and had mildly impaired attention and concentration.  Id. (citing T. at 711-12).  Further, the ALJ noted plaintiff's reported ability to shower, dress, cook, clean, do laundry, and shop with assistance.  See id. (citing T. at 713).

As a part of the ALJ's RFC determination, he indicated that "[t]he record also contains multiple Onondaga County Department of Social Services Employability Assessment forms . . . .  These assessments are less persuasive as they are brief, conclusory forms without sufficient narrative explanation or referral to clinical and diagnostic findings."  T. at 38 (citing T. at 912-945).

**B. Analysis**

Plaintiff identifies various records including "[m]ental status examinations" from Ms. Fico that she alleges that the ALJ ignored.  Dkt. No. 18 at 20.  The Commissioner argues that the ALJ was not required to discuss every piece of evidence and that regardless, "Ms. Fico's progress notes also fail to corroborate the severe limitations in her opinion, as she merely observed that [p]laintiff's mood and anxiety level varied and she was often tearful and cried during appointments[.]"  Dkt. No. 19 at 12.  The Commissioner states that the "signs and symptoms that Ms. Fico listed as well as her narrative conclusions are not substantiated by her treatment records[.]"  Id. at 13.[6]

---

[6] The Commissioner also asserts that plaintiff's ability to "care for a child . . . is also inconsistent with [Ms. Fico's] severe limitations[.]"  Dkt. No. 19 at 12.  The ALJ did not discount Ms. Fico's opinion because plaintiff could care for a child nor did he mention it as one of plaintiff's activities of daily living.  See T. at 33-34.  The Court will not accept the Commissioner's post-hoc rationalizations.  See Marthe v. Colvin, No. 15-CV-6436, 2016 WL 3514126, at *8 (W.D.N.Y. June 28, 2016) ("However, no such explicit findings were made by the ALJ, and this Court is not permitted to accept the Commissioner's post-hoc rationalizations for the ALJ's determination.").

14

Ms. Fico's treatment records indicate that plaintiff reported experiencing anxiety, depression, and PTSD symptoms, she often presented with a depressed and anxious mood during her counseling sessions, she experienced panic attacks, would sometimes avoid leaving her home, had trouble sleeping, had "avoidant behavior[,]" and occasionally "[s]truggled with attendance[.]"  T. at 748, 1008; 722, 736, 739-40, 745-49, 753-54, 757, 1026.  Throughout most of Ms. Fico's treatment notes she indicated that plaintiff was making "[m]inimal progress towards treatment goals[.]"  Id. at 736, 739, 746, 748-49, 753-54.

The single reference the ALJ makes to Ms. Fico's treatment of plaintiff was to a December 2019 "visit" when plaintiff reported "improvement in both depression and PTSD symptoms.  Although she still experiences exacerbation of symptoms at times, she reports feeling emotionally stronger overall."  T. at 32, 951.  This note was a part of plaintiff's "care plan" which (1) listed the providers "who have had input into this plan" as Ms. Fico and NP Shue, (2) indicated plaintiff's projected discharge date, and (3) identified her treatment goals.  Id. at 951-53.  The care plan listed plaintiff's PTSD "[p]roblem [d]etails: [plaintiff] has Post Traumatic Stress Disorder as evidenced by unresolved trauma resulting in nightmares, memories, anger/irritability, hypervigilance, avoidance, panic attacks and so on – impacts her ability to work, develop relationships and manage day to day stress."  Id. at 952.  This is nearly identical to the notation Ms. Fico made on her medical source statement that her opined limitations stem from plaintiff's "PTSD symptoms including avoidance behaviors, persistent, persistent and exaggerated negative beliefs [and] expectations of self/others, persistent neg. emotional state, irritability, recklessness often lead to interpersonal conflicts (anger responses,

aggressiveness towards others), and would be difficult to manage in vocational settings[.]" Id. at 1034.  The care plan also states that plaintiff's "discharge will occur when [her] symptoms no longer interfere with daily functioning and no longer needs monitoring of medications by MD/NP for a minimum of 6 months."  Id. at 952.

The ALJ's statement that Ms. Fico's medical source statement was "not well supported by her treatment records or consistent with the overall medical evidence of record[]" is insufficient to satisfy either the supportability or consistency factor.  T. at 33; see William B. J. v. Comm'r of Soc. Sec., No. 6:20-CV-0989 (LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022) (explaining that the ALJ's conclusion that an "opinion is somewhat persuasive and somewhat consistent with the record because he is the claimant's treating physician[]" warranted remand because it "preclude[d] this Court from undertaking meaningful review of [the ALJ's] evaluation of [the] opinion.").  First, the ALJ did not discuss or cite a single treatment note from Ms. Fico.  See T. at 32-34. As plaintiff explains, the only record the ALJ cited was plaintiff's "case plan" that was signed by all of her mental health providers and set forth the goals for her mental health treatment—containing an identical recitation of plaintiff's PTSD symptoms that Ms. Fico wrote in her medical source statement, including that it impacted her ability to manage vocational stress. Dkt. No. 18 at 20; see T. at 951, 1034.  The ALJ does not explain, and it is not otherwise evident to the Court, how this care plan does not support Ms. Fico's medical source statement when they contain identical language concerning plaintiff's ability to function in a work setting.  See T. at 951, 1034.  Further, Ms. Fico's treatment notes show that plaintiff was continuously experiencing anxiety, depression, and PTSD symptoms including the symptoms that Ms. Fico indicated in her medical

source statement such as avoidant behavior, emotional responses, irritability, and sleep disturbance.  See id. at 722, 736, 753, 1034.  The Commissioner failed to explain the assertion that "the signs and symptoms that Ms. Fico listed as well as her narrative conclusion are not substantiated by her treatment records."  Dkt. No. 19 at 13.  Based on the Court's review, it appears the Ms. Fico's treatment notes and care plan correspond almost identically to the "checked" signs and symptoms on the medical source statement as well as the narrative explanation.  See T. at 722, 736, 745, 753, 951, 1034.  Because the ALJ cited only one part of one page of plaintiff's care plan as the treatment records related to Ms. Fico, the conclusion that Ms. Fico's medical source statement was not well supported by her treatment notes "is inadequate because it frustrates this Court's meaningful review[]" particularly where the treatment notes indicate that plaintiff was making minimal progress towards her treatment goals.  Darla W. v. Comm'r of Soc. Sec., No. 20-CV-1085, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021); see T. at 32-33, 736, 753, 951, 1054.

Plaintiff also identifies the authors of the three "Onondaga County Department of Social Services Employability Assessment forms" as Dr. Stringham, NP Shue, and Ms. Fico.  Dkt. No. 18 at 21 (quoting T. at 38).  The ALJ did not discuss the authors or content of the forms but stated that they were "less persuasive as they are brief, conclusory forms without sufficient narrative explanation or referral to clinical and diagnostic findings."  T. at 38.  The first of these forms is from Dr. Stringham, in which she determined that plaintiff's anxiety, COPD, and restless leg syndrome would cause moderate to severe limitations in plaintiff's ability to interact with others and maintain socially appropriate behavior and severe limitations in her in ability to appear in public.

See id. at 914.  Dr. Stringham noted that the expected duration of the limitations was more than 12 months and that plaintiff "has severe anxiety affecting her social capabilities to interact and work effectively."  Id. at 916.  Further, Dr. Stringham's "PHQ-2/PHQ-9 Depression Screening" and GAD-7 anxiety test resulted in a score in the "severe" category.  Id. at 406.  The ALJ discussed one treatment note from Dr. Stringham which indicated that plaintiff reported worsening symptoms and on examination was anxious, depressed, agitated, withdrawn, and had delayed speech, but with normal cognition, memory, judgment, and thought content.  See id. at 32, 405-407.  The ALJ did not discuss Dr. Stringham's Social Services assessment or any other treatment notes, including the anxiety and depression tests.  See id. at 32.

Ms. Fico and NP Shue also completed a Social Services employability assessment and noted that plaintiff's PTSD resulted in (1) moderate limitations in plaintiff's ability to follow, understand, and remember simple instructions and maintain a schedule and daily routine; and (2) severe limitations in her ability to perform low stress, simple, and complex tasks, interact with others and maintain socially appropriate behavior, and function in a work setting.  See T. at 938-40.  A year later, Ms. Fico and NP Shue completed another employability assessment and indicated that plaintiff's PSTD caused (1) moderate limitations in plaintiff's ability to follow, understand, and remember simple instructions, perform low stress, simple, and complex tasks, maintain a schedule, and maintain attention and concentration; and (2) severe limitations in her ability to interact with others, maintain socially appropriate behavior and function in a work setting.  See id. at 944-45.

The Commissioner argues that "the ALJ is not required to compare opinions with each other and the fact that opinions are consistent with each other does not mean they are supported by the provider's own progress notes or consistent with other objective evidence in the record." Dkt. No. 19 at 14. The Commissioner's argument is unavailing. The regulations mandate that the ALJ "articulate in [the] determination or decision how persuasive [her or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). If "a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis[.]" Id. §§ 404.1520c(b)(1); 416.920c(b)(1). "[A] decision by any other governmental agency or a nongovernmental entity . . . is not binding on" the ALJ. 20 C.F.R. § 404.1504. "However, [the ALJ] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the ALJ] receive[d] as evidence . . . ." Id.

The ALJ stated that Ms. Fico's opinion was "[in]consistent with the overall medical evidence of record." T. at 33. In determining plaintiff's RFC, the ALJ stated that he "considered the medical opinion(s) and prior administrative medical finding(s)[.]" Id. at 35. However, the ALJ did not acknowledge who the employability assessments were from or their content, and in turn did not address the persuasiveness of Dr. Stringham's opinion, cite Ms. Fico's employability assessment when determining the persuasiveness of her medical source statement, or acknowledge that NP Shue also signed Ms. Fico's employability assessments. See T. at 38; see Graciela S. v. Comm'r

of Soc. Sec., No. 20-CV-6648 (FPG), 2022 WL 896764, at *2-3 (W.D.N.Y. Mar. 28, 2022) (remanding because "the ALJ's decision contains no mention of [a doctor's opinion issued in the context of workers' compensation proceeding], let alone a clear articulation of how the ALJ considered the opinion.").  The ALJ then necessarily did not consider whether the opinions were supported by or consistent with the record as required in 20 C.F.R. §§ 404.1504, 404.1420c(b)(1), and 416.920c(b)(1).  This lack of consideration requires remand.  See Prieto v. Comm'r of Soc. Sec., No. 20-CV-3941 (RWL), 2021 WL  3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("The ALJ further erred in his consideration of the three doctors who offered opinions in the workers' compensation context" because "the ALJ made a blanket statement that he 'considered the medical opinion(s) and prior administrative findings in accordance with the requirements of 20 C.F.R. § 404.1520c' . . . without explaining what the relevant factors were and how he applied them, even though that is what the regulation requires.").

Further, to the extent the ALJ summarily discounted the assessments because they were "brief, conclusory forms without sufficient narrative explanation[,]" "the Second Circuit has recently clarified that an opinion by a treating provider should not be discounted solely because it is provided on a check-box form."  Kimberly W. v. Kijakazi, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022) (citing Colgan v. Kijakazi, 22 F.4th 353, 360-61 (2d Cir. 2022)).  Rather, "the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]"  Colgan, 22 F. 4th at 361.  Accordingly,

the ALJ is required to consider the assessments utilizing the delineated factors of the relevant regulations.  See Colgan, 22 F. 4th at 361; 20 C.F.R. § 404.1504.

Moreover, in reviewing the treatment notes, the ALJ indicated that plaintiff was an "unreliable historian[,]" "was feeling well despite not yet starting an increase in" medication, and had normal attention and concentration, intact memory, and fair insight and judgment.  T. at 32.  However, in addition to not addressing the content of the employability assessments, the ALJ did not reference the multiple records indicating that plaintiff was a "reliable historian[,]" that she "struggle[d] with keeping [her] appointments[,]" she did not attend therapy for several weeks and when she returned, it was "difficult to fully engage" because of her emotional responses, that she had not seen her medication management provider from November 2018 to April 2019, and that she was warned of being unsuccessfully discharged" because of "a lack of engagement in Outpatient Treatment" at Helio Health.  Id. at 608, 763, 838, 801-803, 847. Additionally, and much like Dr. Stringham's depression and anxiety test results, during plaintiff's evaluation with Helio Health, her PHQ-9 test was "positive" for depression and her GAD-7 score was a 19.  See id. at 857; 406; see also Melissa P. v. Comm'r of Soc. Sec., No. 5:20-CV-1007 (TJM), 2022 WL 669325, at *9 (N.D.N.Y. Mar. 7, 2022) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all medical evidence in a claimant's favor.")).

The ALJ's lack of consideration of Ms. Fico's treatment records, the employability assessments completed by plaintiff's treating providers, and the objective tests in the

record indicating severe anxiety and depression is particularly concerning in light of the persuasiveness the ALJ afforded to the consultative examiner's and state agency reviewing psychologists' opinions.  See T. at 33.  As the Commissioner explains, opinions of consultive examiners and reviewing psychologists can constitute substantial evidence supporting an ALJ's decision.  See Dkt. No. 19 at 17; see also Teddy N. v. Berryhill, No. 8:18-CV-234 (GLS), 2019 WL 1429519, at *3 (N.D.N.Y. Mar. 29, 2019) (citation omitted) ("It is well-settled that the opinion of a consultative examiner who only examined a patient once can constitute substantial evidence in support of the ALJ's determination if supported by the record."); Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").  However, the Second Circuit has cautioned against such reliance when mental limitations are at issue because "a one-time snapshot of a [plaintiff's] status may not be indicative of her longitudinal mental health." Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019); but see Dale A. M. v. Comm'r of Soc. Sec., No. 5:19-CV-1150 (FJS), 2021 WL 1175160, at *14 (N.D.N.Y. Mar. 29, 2021) (affirming the ALJ's decision because "the ALJ found that [the consultative examiners'] opinions were generally consistent with the record as a whole, which, to the extent that treatment records existed, gave the full picture of Plaintiff's mental health for the relevant period.").

Plaintiff asserts that Ms. Fico's medical source statement and the three employability assessments "were not submitted to the record as of June 19, 2019."  Dkt. No. 18 at 24.  Dr. Hennessey signed his evaluation on February 8, 2019, and Dr.

Momot-Baker signed his revaluation determination on June 19, 2019.  See T. at 104,

121.  Neither included Ms. Fico's medical source statement or the employability

assessments in their "additional explanation" sections.  Id. at 103-104, 120.  It,

therefore, appears that the state agency medical consultants did not review the

opinions, each of which indicated that plaintiff had severe limitations.  See T. at 103-

104, 120-21, 912-45, 1030-34.  The ALJ explained that the state agency reviewing

psychologist opinions were "well supported" by the consultative examination findings but

did not account for the opinions' failure to consider the four medical opinions from

plaintiff's treating providers.  Id. at 33.  "Such a conclusory statement is an insufficient

explanation of the supportability factor and is grounds for remand."  Prieto, 2021 WL

3475625, at *13 (finding error where the ALJ "afforded the most weight" to the

consultative examiner because the opinion was "supported by the medical evidence of

record and by her underlying examination[]" but did not explain what medical evidence

supported the opinion) (citing Brianne S. v. Comm'r Of Soc. Sec., No. 19-CV-1718,

2021 WL 856909, at *5 (W.D.N.Y. March 8, 2021) (ALJ committed legal error by failing

to adequately apply the supportability factor because the ALJ "did not examine what

[the doctors] used to support their opinions and reach their ultimate conclusions.")).  The

ALJ did not explain what records the reviewing psychologists relied on or how those

supported the opinions, despite conflicting treatment records or medical assessments

from plaintiff's treating providers.  See T. at 33; see Skartados v. Comm'r of Soc. Sec.,

No. 20-CV-3909 (PKC), 2022 WL 409701, at *9 (E.D.N.Y. Feb. 10, 2022) (remanding

because the ALJ relied on the state agency consultant's opinion who in turn, relied only

on the consultative examination findings, which was a onetime examination and did not consider the entirety of the plaintiff's lengthy mental health history).

The Commissioner contends that plaintiff "has failed to show that her condition deteriorated after Dr. Alexander and the state agency psychologists completed their review." Dkt. No. 19 at 18.  Although there does not appear to be a significant deterioration in plaintiff's mental health after their review, the state agency psychologists determined that plaintiff had "a non-severe level of impairment" based on the consultative examiner's "mild to moderate" limitation findings, one "moderate" episode of recurrent depressive disorder and anxiety indicated in the record, and her "normal" mental status examinations.  T. at 103-104, 120-21.  It is possible that had the state agency psychologists also reviewed the three employability assessments and Ms. Fico's medical source statement indicating severe limitations, that their determinations would have changed.  See Graciela S., 2022 WL 896764, at *3 ("[T]he persuasive value to be given to the opinion and the relevance of [the doctor's] observations and clinical findings during his examination, especially when viewed in the context of the medical record as a whole, are fact-intensive issues better left to the ALJ on remand.  At this juncture, the Court cannot conclude that the opinion, and the clinical findings underlying it, could have no effect on the outcome of the ALJ's decision."); Sanford v. Berryhill, No. 3:18-CV-01019 (SALM), 2019 WL 427322, at *8 (D. Conn. Feb. 4, 2019) ("The Court cannot reasonably conclude that each of the state reviewing, non-examining physicians' opinions would remain unchanged had each doctor had the benefit of reviewing . . . later treatment records and four opinions.").

The ALJ's "cursory explanation[s] [are] insufficient to 'explain how [he] considered the supportability and consistency factors[]'" and remand is required. Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *6 (N.D.N.Y. Feb. 18, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)) (citing Jaleesa H. v. Comm'r of Soc. Sec., No. 1:20-CV-01180 (EAW), 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022) (remanding where "the ALJ did not *explain* anything—instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations.")).  This is particularly true where the ALJ relied on a few treatment notes from Ms. Fico, NP Shue, and Dr. Stringham indicating normal or improving mental health symptoms but ignored the same providers' employability assessments indicating severe limitations and Ms. Fico's treatment notes indicating minimal treatment progress, continuous presentation of symptoms, and a nearly identical recitation of plaintiff's symptoms and alleged inability "to manage in vocational settings."  T. at 1034; 32. None of this is to say that on remand, the ALJ could not ultimately come to a similar conclusion.  See Kimberly W., 2022 WL 561665, at *5.  However, the ALJ must sufficiently explain the relevant factors such that the Court can meaningfully review whether those conclusions are based on substantial evidence.  See Stacy D. v. Comm'r of Soc. Sec., 358 F. Supp. 3d 197, 202 (N.D.N.Y. 2019) ("An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.").

## 2. Remaining Arguments

As remand is required, the Court need not reach plaintiff's remaining arguments. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach remaining arguments about "whether substantial evidence supports various determinations made by [the] ALJ"); Hamilton v. Astrue, No. 5:11-cv-954 (GLS), 2012 WL 5303338, at *3 (N.D.N.Y. Oct. 25, 2012) ("Because [the plaintiff's] remaining arguments are contingent upon the ALJ's resolution of the foregoing issue on remand, the [C]ourt need not address them.").  However, the Court notes that whether a medical opinion of record concerns plaintiff's mental limitations as discussed throughout the Memorandum-Decision and Order, or her physical limitations, the Commissioner is "to assiduously apply the relevant requirements for reviewing medical opinions under" 20 C.F.R. §§ 404.1520c(b) and (c), 416.920c(b) and (c).  Marc G. v. Comm'r of Soc. Sec., No. 3:20-CV-1032 (CFH), 2022 WL 675701, at *16 (N.D.N.Y. Mar. 7, 2022).

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's motion for judgment on the pleadings, Dkt. No. 18, is **GRANTED**; and it is further

**ORDERED**, that defendant's cross-motion for judgment on the pleadings, Dkt. No. 19, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to

26

sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED.**

Dated: May 4, 2022
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge